S. W. WALTON, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 15, 1890.

1. **Practice, Appellate:** WEIGHING THE EVIDENCE. This court will not reverse a judgment at law on the ground that the verdict is in its opinion against the weight of the evidence.

2. **Evidence:** EXPERT TESTIMONY. The opinion of a witness to a matter in issue is not competent evidence, if the subject be not one which is beyond the knowledge or experience of ordinary men.

3. **Practice, Appellate:** PRESUMPTIONS. All error is presumed to have been prejudicial, unless it affirmatively appears that it was not so.

*Appeal from the Webster Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Wallace Pratt* and *C. B. McAfee*, for the appellant.

(1) The case was tried on the special contract of plaintiff, read in evidence, although it was not pleaded in petition, and the burden is on the plaintiff to show plaintiff's negligence. *Clark v. Railroad*, 64 Mo. 448. (2) It is not shown by any witness that the damaged condition of the stock was caused by the negligent handling of the train as charged in the petition. (3) The evidence shows beyond dispute that the car was grossly overloaded by plaintiff, and that the damages were caused by this crowded condition of the car, showing conclusively plaintiff's contributory negligence. Thompson on Neg., p. 1178; *Norton v. Stone*, 86 Mo. 351; *Milburn v. Railroad*, 76 Mo. 109. (4) The court permitted Cantrell to give his opinion as an expert in answer to questions not based on the facts but on facts not in evidence at all. *Hathaway v. Ins. Co.*, 48 Vt. 335; *In re Ames' Will*, 51 Iowa, 596; *Herald v. Shing*, 45 Me. 392.

*Samuel N Dickey*, for the respondent.

BIGGS, J., delivered the opinion of the court.

On the twenty-sixth day of November, 1888, the plaintiff delivered to the defendant a carload of cattle and hogs, to be shipped by defendant from Fordland, a station on the defendant's railroad, to Kansas City. The plaintiff brought this action, and claimed that the defendant's servants were guilty of negligence in the transportation of the stock, and that, by reason of such negligence, nine head of the cattle and twelve head of the hogs were killed, and the remainder delivered at Kansas City in a very damaged condition. The negligence complained of by the plaintiff, and which was alleged in his petition, was in effect that the defendant's servants, in running the train from Fordland to Kansas City, operated it in such a negligent

manner as to cause the cars to frequently collide with great force, so as to throw the cattle and hogs off their feet and force them upon and against each other with great violence, and that this caused the death of nine cattle and twelve hogs, and greatly damaged the others.

The defendant's answer contained a general denial, and the further defense that the plaintiff and defendant entered into a written contract concerning the shipment of the stock, and that the plaintiff, in consideration of a reduced rate of freight, agreed that the defendant should be released from its common-law liability as a common carrier, and that its liability should be that only of a private carrier for hire; that the plaintiff assumed all the risk of injury to the animals shipped by reason of heat, suffocation or any ill effects of being crowded, or by reason of any animal being weak or unruly; and that the plaintiff was to load and unload the stock at his own risk and attend to them while on the cars. The defendant then averred that the plaintiff wrongfully and negligently overloaded the car, and that this caused the suffocation of some of the stock and the alleged injury to the others; that the plaintiff, in violation of his contract, shipped twenty-eight head of cattle and thirty-one head of hogs in the car, and that this mixture of the two kinds of stock contributed directly to the loss.

To this answer the plaintiff filed a replication, and, on the issues thus framed, the case was tried and submitted to a jury. There was a verdict and judgment for the plaintiff for two hundred dollars.

The defendant has assigned various reasons for reversal of the judgment, but we deem it necessary to discuss only two propositions or questions presented by the record:

*First.* At the close of the evidence the defendant asked the court to give the following instruction: "There is no sufficient evidence proving defendant guilty of the

carelessness and neglect charged in the petition and you will find the issues for the defendant." The court refused to give this instruction, and the defendant assigns this for error.

*Second.* On the trial the plaintiff introduced J. P. Cantrell, as a witness, and during his examination the plaintiff's counsel asked him the following question :

"*Q.* If a carload of cattle and hogs are loaded at Diggins and stay there half an hour and were taken from there to Humansville, eighty-four miles, and be in good condition at Humansville, and in the next thirty-seven miles they were all down and piled up in the car, what in your opinion would be the cause of their bad condition ? *A.* I would guess they were jerked down and tangled up."

The defendant objected and excepted to this question and answer.

I. The general rule is that, if there is any substantial evidence to support a judgment, an appellate court will not interfere. The statement of this rule is very simple, but its practical application is often quite difficult. We have given the record in this case a critical and careful reading, and, while it is undoubtedly true that the affirmative testimony of the persons in charge of the train tended strongly to show that they exercised due care in the discharge of their respective duties and that the injuries to plaintiff's animals were caused by overloading, yet the circumstances connected with the transportation of the stock, when coupled with the testimony of the plaintiff's agent (who had them in charge ) as to the way the train was managed, furnished substantial evidence of the averments of the petition.

It is eighty-four miles from the station where the stock was loaded to Humansville, another station on the defendant's road, and it is thirty-seven miles from Humansville to Deepwater. The evidence of both parties tended to prove that the animals were transported

with safety to Humansville, and that, when the train arrived at Deepwater, it was ascertained that nine of the cattle and twelve of the hogs were dead and the others very greatly injured. The stock was in such a bad condition, that the defendant's employes detached the car and left it on the sidetrack at Deepwater. The dead animals were removed from the car, and the others sent forward to Kansas City the next day. Samuel Trimble had the plaintiff's stock in charge, and his testimony concerning the management of the train from Humansville to Deepwater was as follows : "The train stopped a number of times. I supposed when it started it would go until it slowed to a stop and then back. I could hear cars back and hit the caboose, then they put the brakes on the caboose, then start up and pull again. I can't tell how often. The jarring would sometimes shake a man up pretty lively in the caboose. Whenever they would start, they would seem to jerk up with the same force as when it came back. I cannot say how often this occurred ; it was half a dozen times as well as I recollect on two hills; might have been that often each time as near as I recollect. I can't tell the length of these hills. When they would stop and start, they would sometimes go a very short distance ; can't say how far. As compared with ordinary stops, their stops and starts were harder.

" Q Have you shipped a great deal of stock ? A. A right smart. I traveled with them.

" Q. Is your knowledge sufficient to inform you what causes cattle to get down in cars ? A. I don't know that I have sufficient information to answer. After leaving Humansville I next saw the cattle at Deepwater. Then they were nearly all down, and a good many dead. I don't know how many were piled up on one another, and across each other every way; the dead ones in the center of the car. They switched the car out at the cattle chute, and left it there. The railroad men gave

it in charge of the section men. Me and the railroad men tried to unload, and got a dead one out by hitching a chain to a cow and post and pulling out with the engine and they said the car would have to be unloaded, and they would leave it and go. This car was the second car from the engine.

" Q. State the length of time intervening after rushing the cars back until the engine jerked them forward again? A. Rushed forward and rushed back at once, almost together.

" Q. State if these jars were strong enough to knock a man off his feet without holding to something. (Objected to as improper, incompetent and immaterial.) By court: You may answer if you know of your own knowledge. A. If a man had not been expecting and not on his guard, it would have been hard enough. (This answer objected to as incompetent and immaterial. Objection overruled, and defendant excepted.)

" Q. You stated that these jars were greater than common; just explain the rapidity of them. (Objected to.) By court: If you can explain, answer. A. I don't know that I can; it seems that, when they stopped, all the slack would be made back to the caboose, and then they would start up again. I saw the condition of the cattle at Deepwater."

That the animals were transported to Humansville, a distance of eighty-four miles, without serious injury, and that, in running from Humansville to Deepwater, a distance of thirty-seven miles, about one-third of the animals were killed, and the others were badly injured, are physical facts strongly tending to support the plaintiff's case, and are corroborative of Trimble's testimony. This state of the proof would be satisfactory and quite sufficient to establish the averments that the injuries to the plaintiff's property were directly attributable to the negligence of the defendant's servants, if there had been no proof of misconduct by plaintiff

in overloading the car. The evidence on this point was somewhat conflicting, but the preponderance was against the plaintiff, and was to the effect that the car was overloaded, and that the negligence of the plaintiff in this respect contributed directly to the injury. But, notwithstanding this, we cannot disturb the judgment, although the verdict of the jury may, in our opinion, have been against the weight of the evidence. We will, therefore, rule the first assignment against the defendant.

II. That the question propounded to the witness Cantrell and his answer thereto were objectionable, there can be no doubt. The opinion of witnesses on the substance of an issue should never be resorted to, except when the subject is one beyond the knowledge or experience of ordinary men. It is only in such cases that expert testimony has any value, for the reason that it is merely advisory in its character. In this matter, why should the judgment of Cantrell be substituted for that of the jury. His opinion or "*guess*" on the subject could be no better than that of any intelligent member of the jury.

It only remains for us to determine whether this objectionable testimony was prejudicial. The general rule is that all error is presumed to be prejudicial, and it devolves on the party claiming the benefit of the judgment to satisfy the appellate court that the error was not prejudicial. *Clark v. Fairley*, 30 Mo. App. 335. If the proof in this case, outside of this objectionable testimony, was such as to make the plaintiff's right of recovery reasonably certain, then we might assume that the jury, in arriving at the verdict, was not influenced by the opinion of Cantrell, and that, if the judgment was reversed, a retrial of the case would likely result in the same way. But the record will not admit of this; we cannot say that the jury was not influenced by this evidence, but we would be justified in a conclusion diametrically opposed to this.

We think that the ends of justice require a retrial of this case, and we will, therefore, reverse the judgment and remand the cause. In other respects the court is of opinion that the case was fairly tried. It is ordered that the judgment be reversed and the cause remanded. All the judges concur.