S. W. WALTON, Respondent, v. THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 3, 1892.

1. **Practice, Appellate**: REVIEW OF FINDING OF FACT. Where the preponderance of the evidence against the verdict in an action at law is so strong as to raise a presumption of prejudice, corruption or gross ignorance, on the part of the jury, a new trial will be granted on appeal.

2. **Practice, Trial:** REMARKS OF COUNSEL TO JURY. *Held,* that improper remarks of the counsel of the successful party to the jury were not ground for a new trial, inasmuch as they were checked by the reprimand of the court and not repeated.

*Appeal from the Webster Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Wallace Pratt* and *J. C. Cravens,* for appellant.

(1) The verdict is so opposed to the evidence, that it must be attributed to bias, prejudice or passion, and, accordingly, ought not to be upheld. *Price v. Evans,* 49 Mo. 396; *Rose v. St. Charles,* 49 Mo. 509; *O'Donnell v. Railroad,* 7 Mo. App. 190; *Borgraefe v. Knights,* 22 Mo. App. 127; *Bruen v. Fair Ass'n,* 40 Mo. App. 425. (2) The remarks of counsel for plaintiff were grossly improper and highly prejudicial to defendant, and the court's slight reprimand does not seem to have been of any effect, for the remarks were repeated. *Haliday v. Jackson,* 21 Mo. App. 660; *Sidekum v. Railroad,* 93 Mo. 400; *Koch v. Heble,* 32 Mo. App. 103.

*Fyan & Dickey,* for respondent.

ROMBAUER, P. J.—This cause was here on a former appeal by the defendant. 40 Mo. App. 544. We then reversed the judgment for the reason that the *opinion* of a witness as to the cause of the injury was improperly admitted, and intimated that, in view of the fact that the verdict was opposed to the weight of the evidence, the error was clearly prejudicial. We also held that, under the evidence then adduced, the court committed no error in submitting the cause to the jury. We added that, in other respects, the cause was fairly tried. The cause has been retried, resulting in a

verdict for the plaintiff in an increased amount, and the defendant, appealing, assigns for error that the verdict in the case is so strongly opposed to the weight of the evidence, as to be a mere mockery of justice, and clearly the result of bias and prejudice; that the court erred in its instructions to the jury; and that counsel for the plaintiff was permitted to make grossly improper remarks to the jury in his closing argument.

The facts of the case have substantially been stated in the former opinion. The action is one to recover damages sustained by the plaintiff by reason of the alleged negligence of the defendant in the transportation of a carload of live stock from Fordland, Missouri, to Kansas City, by which nine steers and twelve hogs were killed in transit. The testimony concedes that the stock was transported under a special contract for one carload of *cattle*, entered into between the plaintiff and defendant upon a sufficient consideration, which contract, among other things, contained the following clause bearing on the question under investigation: "The said party of the second part (plaintiff) hereby assumes all risk of injury which the animals, or either of them, may receive in consequence of any of them being wild, unruly or weak, or by maiming each other, or themselves, or in consequence of heat, or suffocation, or other ill effects of being crowded in the cars." The plaintiff contended, and sought to establish, by evidence adduced at the trial, that the animals were killed owing to the fact that the train on which they were transported was too heavy for the engine; that in consequence thereof the train stalled a number of times on a steep grade between Humansville and Deepwater, being two stations about thirty-seven miles apart; and that the repeated violent jerking of the train had a tendency to knock the cattle off their feet and make them fall upon each other. The plaintiff's evidence on

that subject at the last trial was substantially the same
as at the preceding trial. It is set out in full in our
former opinion in 40 Mo. App. 544. The defendant,
on the other hand, sought to establish by evidence that
the injury sustained by the stock was due mainly, if
not exclusively, to the fact that they were greatly over-
crowded in the car.

It is conceded that the car was loaded by plaintiff
himself at a switch of the defendant's at Diggins,
Webster county; that no agent of the defendant was
present while the car was being loaded; and that the
contract of transportation was signed at Fordland, the
nearest station to said switch. The plaintiff himself
testifies that the average weight of the twenty-eight
cattle was between eight hundred and nine hundred
pounds, and the average weight of the thirty-one hogs
between one hundred and eighty and one hundred and
ninety pounds, making, according to plaintiff's testi-
mony, a minimum aggregate weight of twenty-eight
thousand, six hundred pounds, and an aggregate maxi-
mum weight of thirty-one thousand and ninety pounds,
or, according to the most favorable view admissible in
plaintiff's behalf an aggregate weight of twenty-nine
thousand, eight hundred and forty-five pounds. The
plaintiff further testifies that these cattle and hogs were
partly corn-fed. The car in which they were loaded
was a thirty-foot car, having a length of thirty feet by a
width of eight feet, three inches in the clear. The
plaintiff gave no evidence whatever of what constitutes
a proper load for a car of that size, although he did
testify that the car was not crowded, and that the stock
had plenty of room. Two witnesses on his behalf,
neither of whom had shipped any stock before, also
testified to the fact that the stock seemed to have suffi-
cient room. It also appeared by the plaintiff's evidence
that his car was in charge of one Trimble, who had a

carload of stock in the same train immediately in front of plaintiff's car and next to the engine; that Trimble's car was of the same size, and carried twenty-eight head of cattle and eight hogs, of an aggregate weight of twenty-one thousand, three hundred and seventy-five pounds; and that Trimble's stock rode through the entire distance from Diggins to Kansas City, a distance of two hundred and thirty-two miles, without any accident or injury whatever.

The defendant gave the following evidence, which was uncontradicted in any manner: That, under the inter-state tariff rules, a carload consists of twenty thousand pounds, and that carload rates were made on the basis of twenty thousand pounds per car. The defendant then called three extensive shippers of cattle, two of whom testified that they had shipped annually many hundred carloads of stock. They all testified that an ordinary carload was twenty thousand pounds, and that twenty-two thousand pounds is the extent to which any car should be loaded, and can be loaded with safety for any great distance. The shippers shipped from Seymour, a station on the same road, close to Fordland. The following question was then put to each of them: "Could it be reasonably expected that twenty-eight head of cattle averaging eight hundred pounds or over each, and thirty-one hogs averaging one hundred and seventy-five pounds each, and fit for the beef and pork market of Kansas City, crowded into a thirty-foot car, considering the jarring and jostling incident to an ordinarily well-managed freight train, would go through from about Seymour to Kansas City without more or less suffocation, and injury to them from heat and suffocation?" They all answered the question uniformly that they could not go through without injury, one testifying that it would be impossible for them to go through with safety. They explained their testimony

in detail, showing the causes that would bring about the injury; that cattle crowded in such a manner get overheated; that the mixed manure of cattle and hogs slimes the bottom of the car, which gets slippery; that the cattle fall down, and owing to the crowded condition of the car are unable to get up again; and that every animal which falls down and keeps down, necessarily gets into the way of others and causes others to fall down. It is not claimed that these witnesses were not wholly disinterested, or that they were not fully competent to testify to the facts sworn to by them, and there is not one circumstance which tends to impeach the testimony of either of them; on the contrary this testimony seems to be perfectly consonant with the natural and physical results of given conditions, and borne out by the results of this very case. That this car was overcrowded cannot be denied upon the facts conceded by the plaintiff's own evidence, and is conclusively established by the unimpeached testimony of the defendant. The only thing that can be urged as furnishing some other cause of the injury to these cattle is that they rode safely from Diggins to Humansville, a distance of ninety miles, and were found to be in this injured condition at Deepwater, which is only thirty-seven miles beyond Humansville. Hence, it is argued that the stalling and jerking of the train between these two last stations must have brought about the injury. That argument, however, is refuted by the fact that none of the cattle in Trimble's car, which was the very next car to that of the plaintiff, were in the least injured between these two stations, but that they passed safely through to Kansas City.

It appears by the plaintiff's own testimony that Trimble's car was also loaded with cattle and hogs, and was loaded to its full capacity although not over-

crowded. The argument is further refuted by the evidence of the plaintiff's witness Trimble, who admits that two of the plaintiff's steers had fallen down before the train reached Springfield, which is only thirty miles from Diggins. The only conflict in the evidence on that head is that Trimble testifies that only two steers were down at Springfield and he got both of them up, while the defendant's witnesses testify that three were down, and Trimble, after getting up two of them, said the third was lying well and he would let it lie. The argument is further refuted by the fact, conceded by all the evidence and consonant with ordinary experience, that in the beginning of a trip cattle are not as liable to fall down, as they are when tired out in a long journey. It is also refuted by the fact that the conductor, engineer and brakemen of the train all deny that there was any stalling of this train between Humansville and Deepwater, and, conceding that they are biased witnesses, their testimony in that respect seems to be fully borne out by the fact that not one of Trimble's cattle was thrown down in the passage between Humansville and Deepwater; also that the testimony is uncontradicted that the train was of ordinary size and weight for the engine that drew it, and, instead of losing time, it gained upon its schedule time between Humansville and Deepwater. We have set out the testimony thus fully, because upon careful consideration of it we have reached the conclusion that it is our duty to set the verdict aside as evidently being not the result of a weighing of the evidence by the jury, but either the result of bias or prejudice, or a mistake of the law given to them by the court.

The court, upon the defendant's request, gave the following instructions to the jury, among others: "Although you may believe from the evidence that the defendant was guilty of the acts of negligence

charged in plaintiff's petition, yet if you also believe from the evidence that the plaintiff materially contributed to the injuries complained of by overloading and crowding too many animals in said car, you will find the issues for the defendant."

"The undisputed evidence in this case shows that the dead cattle and hogs in controversy perished from suffocation or heat by their getting down upon one another in the car. And the plaintiff by his contract having assumed such risk and exempted the defendant from all liability for injuries resulting from such cause, you will find the issues for the defendant, unless the plaintiff has proven to your satisfaction that such injuries were the direct consequence of some wrongful act of the defendant or its servants, and without any fault of the plaintiff or his agent contributing thereto."

How the jury, under the evidence above detailed, and under these instructions, could have reached the result they arrived at, is inconceivable. That appellate courts will not weigh the evidence is true, but that is saying no more than that the credibility of witnesses is in the first instance for the jury. In *Price v. Evans*, 49 Mo. 396, Judge BLISS impliedly states that it is error in the trial court to refuse a new trial, where the preponderance of evidence against the verdict is so strong as to raise a presumption of prejudice, corruption or gross ignorance on part of the jury. The rule thus stated was reaffirmed in *Spohn v. Railroad*, 87 Mo. 74, and was emphasized by us repeatedly. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Borgraefe v. Knights of Honor*, 22 Mo. App. 148; *Friesz v. Fallon*, 24 Mo. App. 439. The present case calls clearly for the application of the rule.

We do not desire to discuss other points made in appellant's brief, as they arose likewise on the former appeal, and our judgment then, in conformity with the

rules applicable to appellate procedure, furnishes the law of this case. The appellant's abstract concedes that the obnoxious remarks made by counsel for plaintiff in his final argument were reprimanded by the court at once; hence, even if the remarks were objectionable, the court committed no error, because it promply checked them, and they were not repeated.

For the reasons above stated, however, the judgment will be reversed and the cause remanded. All the judges concurring, it is so ordered.