W. R. UPDEGRAFF, Appellant, v. R. N. THEAKER *et al.*, Respondents.

St. Louis Court of Appeals, March 5, 1894.

Voluntary Conveyance: VALIDITY AS TO EXISTING CREDITORS. A voluntary conveyance is not conclusively fraudulent as to existing creditors, it being valid as to them if the donor's ability to pay his debts is not lessened by it in any material degree, or in other words if, after it is made, the donor still has ample means left for the payment of his existing liabilities.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED.

*White & McCammon* for appellant.

A voluntary conveyance made by a debtor in embarrassed circumstances, though without any specific intent to defraud, is fraudulent in law as to all who were creditors at the time of the execution of the conveyance, and whose debts remain unpaid and incapable of collection in the ordinary course of proceedings. *Hurley v. Taylor*, 78 Mo. 238; *Buck v. Moore*, 36 Mo. App. 535; *Boatman's Savings Bank v. Overall*, 16 Mo. App. 515; *Knox City v. Thompson*, 19 Mo. App. 523; *Payne v. Stanton*, 59 Mo. 158; *Jamison v. Bagot*, 106 Mo. 240; *Patten v. Casey*, 57 Mo. 118; *Lionberger v. Baker*, 14 Mo. App. 352. The plaintiff made out his *prima facie* case, when he showed that the defendant was indebted to him at the time of the conveyance from him to Milner and from Milner to Mrs. Theaker,

and that such conveyances were voluntary. *Buck v. Moore*, 36 Mo. App. 535; *Crook v. Tull*, 111 Mo. 283; *Walsh v. Ketchum*, 84 Mo. 427. Then the burden was upon the defendant to show that at that time Theaker had ample means to meet his obligations. This burden was not sustained.

*T. J. Delaney* for respondent.

The fact that a debt, existing at the time of a voluntary conveyance, can not afterwards be collected, is not in itself sufficient grounds to declare the conveyance fraudulent. *Walsh v. Ketchum*, 84 Mo. 427.

BIGGS, J.—On the fifth day of August, 1889, the defendant R. N. Theaker conveyed to one Milner certain real estate in the city of Springfield. On the fifth day of August, 1890, Milner conveyed the same property to the defendant M. M. Theaker, the wife of R. N. Theaker. On the nineteenth day of March, 1892, the plaintiff bought the same property under execution against R. N. Theaker, and received a sheriff's deed therefor.

This action is brought by the plaintiff to set aside the deed from R. N. Theaker to Milner, and also that from Milner to Mrs. Theaker, on the gound that both conveyances were voluntary and that they were made with the intention to hinder or delay the creditors of R. N. Theaker. On the hearing of the case the proceeding was dismissed, and the plaintiff has appealed.

The record presents the following facts: On the seventeenth day of June, 1889, R. N. Theaker bought from the plaintiff ten shares of stock in a pottery company. a corporation, agreeing to pay therefor the sum of $225. He executed his note for the purchase money, pledging the shares of stock as collateral.

Prior to the purchase Theaker had eighty shares of the same stock, and the plaintiff one hundred shares. The object of the purchase was to make them equally interested. Some time afterwards the plaintiff realized a small sum out of the collaterals. The property in dispute consisted of a house and lot. The lot was purchased by Theaker in 1886 for $770. Afterwards, and prior to 1889, a house was built on it. Milner is a brother of Mrs. Theaker, and, for the purpose of securing a house for his sister and her children, he assisted Theaker in paying for the lot with the understanding that it should be conveyed to her. He also furnished a large amount of the lumber which was used in building the house. Just how much of the purchase money he paid, or how much lumber he furnished, the record does not show. On February 1, 1892, the plaintiff obtained a judgment against Theaker for the balance due on his note, and he caused the property to be levied upon under execution and sold as herein stated. It is conceded that the conveyances of the property by Theaker to Milner, and by the latter to Mrs. Theaker, were without consideration other than the moral obligation resting on Theaker to have the title to the property vested in his wife in accordance with his promise to Milner at the time the latter assisted in the purchase and improvement of the lot.

Before we look into the evidence touching the financial condition of Theaker at the time of the conveyance to Milner, it would probably be better to state the rule by which the plaintiff's rights in the premises are to be ascertained.

After some conflict and confusion in the decisions, in respect to the rights of existing creditors in cases like we have here, the supreme court in the case of *Walsh v. Ketchum*, 84 Mo. 427, adopted the rule stated by Bump on Fraudulent Conveyances, pages 275, 276,

as follows: "The presumption of an intent to delay, hinder and defraud creditors arising from a voluntary conveyance by a person who is in debt in not conclusive, for such a conveyance is fraudulent only when it necessarily delays, hinders or defrauds them. * * * The true rule by which the fraudulency or fairness of a voluntary conveyance is to be ascertained, in this respect, is founded on a comparative indebtedness, or in other words on the pecuniary ability of the donor at the time to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their then prospects of payment." In such cases "the burden of proof rests upon the donee to establish the circumstances which will repel the presumption of a fraudulent intent. The conveyance stands condemned as fraudulent, unless the facts which may give it validity are proved by him. If no evidence is given to show that the donor had ample means to meet his liabilities, then the transfer must be deemed void as against creditors."

The plaintiff testified that at the time of the transfer of the lot to Milner, to wit, August 5, 1889, Theaker owed him the note for $225, secured by ten shares of the capital stock of the pottery company, and that he owed Jerome Dickerson $600 secured by a mortgage on certain other property. These were the only individual debts of Theaker, of which there was any substantial evidence. The plaintiff testified about the debts of the pottery company, but he nowhere stated that Theaker was personally responsible for any of them.

Now it is conceded that the Dickerson debt was fully secured, and that it was afterwards satisfied out of the proceeds of the property pledged by Theaker for its payment. The plaintiff's note was secured by ten shares of the capital stock of the pottery company.

As the note was given only about forty or forty-five days prior to the alleged fraudulent conveyance, and was for the purchase money of the ten shares of stock which were pledged as collateral, it is but fair to presume that the debt was almost, if not fully, secured, especially since there is nothing in the record to show that in the *interim* there had been any material change in the financial condition of the corporation. Therefore when Theaker made the conveyance to Milner, his outstanding debts, amounting to only $825, were fully secured. In addition to the property conveyed for the benefit of his wife, and that which he had pledged to Dickerson and the plaintiff, he held eighty unpledged shares of stock in the pottery company, which, according to the valuation placed on them by plaintiff, only a short time before, were worth $1,800. The other evidence shows that he owned other unincumbered real estate in Springfield of the value of $500, and that his other property was worth probably $500 or $600. Theaker's deposition was read in evidence by the plaintiff, in which he testified that at the time he conveyed the house and lot to Milner his business was in a prosperous condition, and that his shares of stock were worth at that time $2,500. The evidence also tended to prove that in December, 1889, Theaker sold his stock in the pottery company to Milner, and that the concern afterwards went into liquidation, the assets paying little more than the liabilities. It was also shown that, prior to the date of the plaintiff's judgment, Theaker had disposed of all his property in this state, leaving nothing out of which the plaintiff could collect his debt.

Under this evidence the circuit court was of the opinion that no equity existed in favor of the plaintiff against the property of Mrs. Theaker; and we are of the same opinion.

. The plaintiff presents his case solely on the theory that the deed from Theaker to Milner was constructively fraudulent as to the existing creditors of Theaker. That conveyance must be judged and characterized by the *then* financial condition of Theaker, and not by subsequent events. The test is, was the plaintiff, who was an existing creditor, prejudiced at the time in the payment of his debt. Or, adopting the language of Mr. Bump, did Theaker have the ability to withdraw the amount of the donation from his estate without in any material degree lessening the plaintiff's *then* prospects of payment? Or, stating the proposition in another way, did he have ample means aside from the property conveyed to meet his existing liabilities? Theaker's statement was, and in this he is supported by other witnesses, that at the time he only owed $825, which was fully secured, and that, aside from the house and lot conveyed for the benefit of his wife, his other property was worth about $3,500. Now, if under these facts the plaintiff can prevail, it is difficult to imagine how any husband, unless entirely free from debt, could safely donate property to his wife.

The judgment of the circuit court will be affirmed. All the judges concur.