Jeans v. Morrison.

R. M. JEANS, Respondent, v. D. B. MORRISON, Appellant.

St. Louis Court of Appeals, March 3, 1903.

1. **Cities, Towns and Villages:** ORDINANCES OF CITIES OF THE FOURTH CLASS: IMPOUNDING OF STOCK RUNNING AT LARGE. Cities of the fourth class in Missouri, are empowered to regulate or prohibit the running at large of horses and other animals, to provide for the erection of suitable pounds, pens, and buildings, and enforce rules governing the same.

2. ———: ———: ———. In the case at bar, the ordinances of a city are examined and held to be valid and must be enforced.

3. ———: ———: ———: SALE OF ANIMAL TAKEN UP BY CITY MARSHAL: TITLE. A sale of an animal taken up by a city marshal of a city of the fourth class, where the notice of impoundage, the notices of sale, and the judgment of the police judge were regular, will be upheld, and replevin will not lie, even though the owner of the animal was a non-resident of the city at the time the animal strayed into the city and was taken up by the city marshal.

4. **Practice, Appellate:** PRACTICE, TRIAL: VERDICT: PREJUDICE: SETTING ASIDE VERDICT. An appellate court, like the trial court, may set aside a verdict when it is manifestly arbitrary and dictated by prejudice.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper*, Judge.

REVERSED AND REMANDED.

*Sturgis & Geyer* for appellant.

The case of Sherrell v. Murray, 49 Mo. App. 233, decided by this court is "on all fours" with this case. The facts are the same except that the animal was replevined from the marshal before sale. The facts there as here were established by uncontradicted evidence. Plaintiff's ownership of the animal was conceded, thus making a prima facie case for plaintiff. But the evidence was uncontradicted that the animals

were running at large and impounded by the city marshal under the ordinance in evidence. The court said: "It is difficult to see how under this state of evidence there was any question in the case left for the consideration of the jury. We are bound to take judicial notice of the fact that . . . all city corporations have power by ordinance to restrain any animal from running at large within the corporate limits of the city outside of the owner's inclosure. There is no pretense in the evidence that the hogs were not running at large within the corporate limits when taken up and in the absence of any evidence on that subject the presumption is that the defendant as city marshal did his duty. . . . Now there is no evidence in the case whatever that the defendant failed to comply with the provisions of such ordinance and what the jury thought on that subject was wholly immaterial." Bank v. Bank, 151 Mo. 329; Flynn v. Walker, 151 Mo. 545; Wilson v. Purl, 148 Mo. 449; May v. Crawford, 150 Mo. 504; Carter v. Railroad, 156 Mo. 635.

*James H. Pratt* and *Andrew J. Harbison* for respondent.

(1) Dillon's Municipal Corporations, volume 1, at page 176, section 150, says, in part: "Power to impound and forfeit domestic animals must be expressly granted to the corporation, and laws or ordinances authorizing the officers of the corporation to impound, and upon taking specified proceedings to sell the property, are penal in their nature, and where doubtful in their meaning will not be construed to produce a forfeiture of the property, but rather the reverse. The pound-keeper can not justify in an action brought against him by the property-owner unless he has strictly complied with all of the requirements of the law under which he acts. Thus if he sells without

giving the requisite notice, or for the full length of time required, he is liable, although the owner sustains no actual injury from the omission, or the owner may treat the sale as void and recover his property. White v. Tallman, 2 Dutch. (N. J.) 67; Willis v. Legris, 45 Ill. 289; Rounds v. Stetson, 45 Me. 596; Gilmore v. Holt, 4 Pick. 258; Rounds v. Mansfield, 38 Me. 586; Smith v. Gates, 21 Pick. 55.   (2)   A verdict based on conflicting but sufficient evidence will not be disturbed on appeal as being contrary to the evidence when it has been approved by the trial judge on motion for new trial.   14 Ency. Plead. and Prac., page 989; Hill v. Sutton, 8 Mo. App. 353; Watson v. Stromberg, 46 Mo. App. 630.

GOODE, J.—The marshal of Neosho, Missouri, a city of the fourth class, took up a mare which was straying about the city on July 5, 1901, and put her in the city pound.   He afterwards published notice for ten days of the impounding of the animal, giving an accurate description of her, by printed handbills posted in the hall of the courthouse, in the postoffice of the city and in several other places; likewise by sending out several of the notices by mail.

The handbills stated where the stock pound was, to-wit, at Brown's livery stable at the southeast corner of the public square, described the mare as a small sorrel mare, small white spot on forehead, about five years of age, slender build and about fourteen and one half hands high; which is the way she is described by the plaintiff in his statement in this case.   The handbills also notified the unknown owner that unless he claimed the animal from the pound and paid the costs of her keep and of the proceedings connected with her restraint in ten days from July 5, 1901, she would be sold under judgment of the police judge of the city and the proceeds applied to the   payment of said   costs. No owner appeared to claim the animal in the time

fixed, so, on the sixteenth of July, Pearman, the marshal, made oath before the police judge of the impounding of the animal, describing her, of the notices he had published and that no owner had appeared to show cause why she should not be sold. Thereupon the police judge entered an order directing the marshal to sell the mare to the highest bidder for cash in hand at public vendue, giving notice of the time, terms and place of sale by handbills posted as required by ordinance, and to pay out of the proceeds of the sale the cost of impounding, keeping and feeding the animal and of the proceedings in the action to sell, and to turn the remainder of the proceeds into the treasury of the city for the owner of the animal. On the margin of the judgment was an itemized statement of the fees and costs which had accrued for the restraint and care of the mare and the sale. The marshal forthwith gave notice by handbills that he would sell the mare July 22, 1901, between the hours of nine o'clock in the forenoon and two o'clock in the afternoon, at the southeast corner of the public square in the city of Neosho, at public vendue, for cash in hand, to pay the costs of detention and of the subsequent proceedings, the notice containing an accurate description of the mare.

Sale was accordingly made on the day named in the notice, and the animal was bought by one Brown who subsequently sold her to Reagan, who in turn sold her to defendant Morrison, in whose possession she was discovered by the plaintiff some time in September, 1901, and this action of replevin instituted to recover her from Morrison.

The mare strayed from the owner's farm in May, 1901, and was at large until she was impounded in July. When taken up she was in bad condition, very thin in flesh and with swollen legs, owing, it is said, to the dry weather. Jeans looked for her when she escaped from his premises, and in the course of his

search made inquiries; but he testified he made no inquiry at the Neosho stock pound nor asked where the pound was, though he visited Neosho.

Two ordinances of said city were introduced in evidence, the first being ordinance No. 36, enacted August 3, 1897, which made it unlawful for the owner of horses, mules or asses to permit the same to run at large inside the corporate limits of Neosho and outside the inclosure of the owner or person having them in charge. Said ordinance also provided that if any such animals were found at large inside the city limits, it should be the duty of the marshal to restrain them in a suitable place to be procured by said marshal under an order of the board of aldermen, which place should be known as the city stock pound; that such animal or animals should be safely kept therein until disposed of as provided by the ordinance. As to the disposition of the animals which might be impounded, the ordinance provided that the owner should be notified by written or printed handbills posted in the courthouse and postoffice as the most public places in the city; that the notice should contain a true description of any animal restrained, that the owner if known, otherwise the unknown owner, should be notified to claim or take the animal from the pound, the locality of which should be designated, and that the owner should pay the costs incurred or the animal would be sold under judgment of the police judge of the city to pay the same.

Another section of the ordinance provided that on proof made before the police judge that an animal had been found running at large in the city and impounded and that ten days' notice of its impounding had been given, said police judge, unless the owner or person having the care of the animal showed good cause to the contrary, should make and enter on his record an order for the sale of the animal and to pay the costs and expenses of keeping it and of the restraint

proceedings, reciting the facts and specifying the items of cost.

The ordinance also provided that the police judge should certify to the city marshal a copy of every judgment of that kind on receipt of which the marshal should give five days' notice by written or printed handbills posted in the courthouse and postoffice, describing the animal and the time, terms and place of sale; and thereupon should sell it for cash in hand at public vendue to the highest bidder.

Another ordinance, No. 220, adopted April 26, 1898, referred to the preceding ordinance, No. 36, but besides horses, mules and asses, made it unlawful for the owner of sheep, fowls, swine or poultry to suffer the same to run at large within the city limits, providing also for their impounding and for notice, judgment of sale and sale, according to the provisions of ordinance No. 36.

The plaintiff identified the mare as his property, swore she strayed from his farm on the date mentioned, that he looked for her in Neosho and elsewhere; then rested.

The defendant put in evidence the city records in regard to the impounding and sale of the animal.

For the plaintiff the court instructed the jury that if they believed from the evidence that at the commencement of this action plaintiff was the owner of the property in controversy and had a right to the immediate and exclusive possession thereof, they would find the issues for the plaintiff; also that unless the jury believed from the weight of the evidence that in impounding the animal the city marshal complied with the law in every particular, that is to say, gave the required notice under the law, they would find the issues for the plaintiff if they believed he was the owner of the animal when it was taken up.

For the defendant the court instructed substantially as follows: That if the mare was found running

at large in Neosho near the public square and was taken up by the marshal and placed in the stock pound at Brown's livery stable near the southeast corner of the square; that the marsal posted two or more of the notices read in evidence, one in the hall of the courthouse and another at the postoffice for at least ten days; that afterwards the police judge of the city rendered the judgment in evidence and certified the same to the marshal who thereupon posted at least two copies of the notices of sale read in evidence at the places mentioned at least five days before the sale, and afterwards sold the animal to the highest bidder for cash at the time and place stated in the notices, no one having claimed her meanwhile, then the purchaser at the sale got a good title and the verdict should be for the defendant.

The court also instructed that the said ordinances were valid, empowered the marshal to take up and restrain any horse running at large inside the city, to impound and sell it and if, in so doing, the provisions of the ordinance were complied with, the purchaser obtained a good title. Further, that if the jury found the mare in question was running at large in the city and was impounded by the marshal and notices were posted as the ordinances required, judgment rendered by the police judge in the manner prescribed by the ordinances, and the mare was then advertised and sold as provided in the ordinances, the sale was valid and the purchaser thereat got a good title.

The jury returned a verdict in which they found that at the commencement of the suit plaintiff was the owner and entitled to the immediate possession of the property in controversy and assessed his damages for her taking and detention at one dollar.

From the judgment entered on said verdict the defendant appealed.

Cities of the fourth class in Missouri, are empow-

ered to regulate or prohibit the running at large of horses and other animals, to provide for the erection of suitable pounds, pens and buildings, and enforce rules governing the same. R. S. 1899, sec. 5959; Sherrell v. Murray, 49 Mo. App. (St. L.) 233; McVey v. Barker, 92 Mo. App. (St. L.) 498.

The ordinances enacted to carry out this charter power were valid and must be upheld and enforced.

It is said by the plaintiff that the second ordinance operated to repeal the first one; but this is not true, because the second distinctly refers to the first as still in force and directs a sale of any animals or poultry taken up and impounded in accordance with the provisions of the first ordinance. The manifest purpose of the second ordinance was to enlarge the scope of the first one by directing the impounding, not only of horses, mules and asses, but of sheep, swine and poultry. There is no clash between the two regulations and both were in force at the time plaintiff's mare was taken up.

A point is made about there being three city pounds, but the evidence on this point shows that there was only one on the day the mare was impounded and for some time before, and that it was located at Brown's livery stable in the southeast corner of the public square. The marshal was authorized to provide for a pound and when the change was made he tacked a notice on the door of the old one which stated where the new pound was. There is nothing in this point technically. As to its bearing on the merits, suffice to say the plaintiff himself testified that when he was hunting for his mare he never went near the city square nor asked where the stock pound was nor if there was a pound, but contented himself with inquiring for his property in the outskirts of the city.

It is said the order of the police judge to make the sale failed to recite the items of cost. Said items were entered on the margin of the judgment, which

is the place where cost items are usually noted by a magistrate and we think the law was sufficiently complied with in that regard.

Both the notices of impoundage and the notices of sale published by the marshal were complete; they described the mare, told the site of the pound in which she was detained and in all respects fulfilled the ordinances so far as we can see. That the sale of the mare pursuant to the aforesaid proceedings passed title to the purchaser, who in turn passed title to the defendant as the final purchaser, there can be no doubt under the authorities, supra, and under all the decisions we have run across that deal with the sale of impounded stock by virtue of municipal ordinances. Such police regulations are regarded as indispensable to the safety of the inhabitants, the cleanliness and the convenient use of the streets of cities. Stray animals can not be permitted to run at large in city streets; for they cause accidents and annoy and alarm people. Indeed, cases are not lacking in which stray stock in public streets are treated as a public nuisance which the authorities have the right to abate. Spitler v. Young, 63 Mo. 42.

Neither does it make any difference that the owner of this particular animal was a non-resident of the city of Neosho. He may not have been subject to the fines and penalties provided by the ordinances; but when his mare strayed into the corporate limits of the municipality, she was subject to impoundage as well as the stock of residents. Spitler v. Young, supra.

Notwithstanding the conclusiveness of the evidence and that no single issue of fact was contested; notwithstanding every fact was positively proven which the jury were instructed they must find in order to render a verdict for the defendant, they rendered one for the plaintiff. In support of this verdict it is contended the jury had the right to weigh the testimony of the witnesses for the defendant and disregard it if they thought it unworthy of belief; and cases are not

lacking which may be plausibly argued to support that position. Gannon v. Gas Light Co., 145 Mo. 502. The case just cited, like all others, must be dealt with according to the facts it presented to the court which decided it. The general doctrine therein maintained we consider sound, and would be obliged to follow it if we thought otherwise; but that doctrine must not receive an unreasonable extension or it will become fraught with mischief and promote miscarriages of justice.

In the case in hand the contention that the verdict of the jury must be allowed to stand because they were the triers of the fact and might disregard the uncontradicted testimony for the defense, is equivalent to saying the jury had the right to disbelieve the marshal's testimony that he took up the animal within the city limits, that he impounded her, that he sold her or that he published the notices. But none of those matters was at all contested at the trial, plaintiff insisting, as we gather, on but three points: that the ordinances were in conflict and that the one last passed repealed the other; that the judgment of the police judge was invalid because it did not contain a specification of the costs; that the owner had the right to claim his property because the city pound had been changed. There is no merit in either of these points, in our opinion, for reasons above stated, and having so ruled we do not think Gannon v. Gas Light Co., supra, forces us to uphold the verdict on the possibility that the jury may have disbelieved the city marshal as to the matters above mentioned. Moreover, that authority does not undertake to annul the doctrine that a trial court may set aside a verdict and grant a new trial when the verdict found was against the weight of the evidence, and that an appellate court may do likewise when the verdict was manifestly arbitrary and dictated by prejudice. It is clear beyond doubt to our minds, that the impounding of plaintiff's mare and all the proceedings leading to the sale were regular and valid, that a good title

passed to the purchaser at the public sale and from him to his grantee and thence to the defendant. We can not, therefore, allow the defendant to lose the property so acquired on what seems to us the wholly unwarranted verdict of the jury rendered in disregard of the court's instructions and of the evidence before them.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.