J. W. WRIPPLE, RESPONDENT, v. EDWARD AARON, INCORPORATED, A CORPORATION, APPELLANT.—74 S. W. (2d) 1089.

Springfield Court of Appeals.   October 3, 1934.

*McReynolds & Flanigan* and *Winger, Reeder, Barker & Hazard*, of Counsel, for appellant.

*Howard Gray, Donald C. Cox* and *John C. Nipp* for respondent.

ALLEN, P. J.—The first count of respondent's petition alleges that he was employed by appellant corporation, on the 10th day of February, 1927, as the manager of its poultry plant, at Lamar, Missouri, until January 1, 1928, for which services he was to be paid seventy-five dollars per week, and in addition to his salary he was to receive ten per cent of the net profits of the business at Lamar, which he alleged amounted in all to the sum of $13,000, so that there was due respondent, as his commission, the sum of $1,300 less the sums of $300 paid by appellant to respondent, on January 28, 1928, and $200 paid June 29, 1928, and asked judgment in the sum of $800, with interest at six per cent from December 31, 1927.

The second count alleges that on January 1, 1928, by agreement between the respondent and appellant, the oral contract between them was extended to include the year of 1928; that ten per cent of the net profits of the business at Lamar, for that year, amounted to the sum of $1,000 for which he asked judgment, with interest at six per cent, from December 31, 1928.

Appellant's answer was a general denial, and an allegation that the two sums of $300 and $200, each mentioned in the petition were merely loans from appellant to respondent, and filed counterclaim therefor, in this action.

Upon trial by a jury, the verdict was for respondent. On the first count of the petition, in the sum of $1794.70 and on the second count of the petition $1180.10, and for appellant, upon the first count of its counterclaim, in the sum of $393 and also for appellant, on the second count thereof, in the sum of $259.

Upon appellant's motion for a new trial, the court made the following order: "It appearing from the files and records herein that the judgment heretofore entered in this cause is excessive, in the sum of $322.80 and if a *remittitur* in that amount is made by plaintiff, the court will overrule the defendant's motion for a new trial." The respondent accepted the terms of the *remittitur*, which reduced the verdict of the jury to the sum of $2,000. Defendant refusing to accept the terms of the *remittitur*, prosecutes its appeal from the judgment thereon.

The oral evidence offered by respondent was the testimony of himself and wife. He said that for each of the years of 1927 and 1928, his contract of employment by appellant, was for a salary of $75 per week, and in addition thereto ten per cent of the "net profits" for each of the two years' business at Lamar.

The testimony of Edward Aaron contradicted the claim of respondent, that he was to receive the commission of ten per cent of the "net profits," but the finding of the jury upon that issue is conclusive upon this court.

Therefore, in our opinion, there is but one question for our consideration in this case, to-wit: That of the profits of the business of appellant, if any, at Lamar, during the two years of 1927 and 1928. Respondent's testimony as to his service and duties was not disputed. He supervised the buying and shipping of eggs and poultry, packing eggs and feeding and dressing poultry for shipment; kept a monthly record of all labor and other expense, in the operation of the business at Lamar; sent daily reports thereof to the main office of the company, at Kansas City, and at the end of each month sent a monthly inventory to the home office, receiving in return from the main office within a week or ten days, statements showing the net results for the preceding month. Depreciation was computed for the year's period.

Respondent, in defining the meaning in trade, of the term "net profit," as used in his contract with appellant, said he understood the term to mean "the absolute net of the year's business." That is the net profit at the end of each month and at the end of the year a total net profit; that the net profit meant the gross profit less the operating expenses. That as manager, he had entire charge of the plant and the business transacted there. That appellant owned the building and equipment at Lamar, and that the depreciation of the building was included in the meaning of that term as used in the yearly business report.

Mrs. Whipple, the wife of respondent, who prepared the reports that were sent from the Lamar plant to the main office at Kansas City and to which were added by that office such items of expense as insurance, attorney's fees, interest and depreciation, which items were generally figured in Kansas City. That the sales were usually handled from Kansas City, where they had the information of the various items of expense last mentioned. That the statements received at the Lamar plant from the Kansas City office were destroyed by fire, prior to the trial of this case in the circuit court, from which fact it was evident that the testimony of both Mr. and Mrs. Whipple was largely dependent upon memory, which necessarily included a great number of complicated items, making up the business of appellant, at Lamar, and included in the monthly and annual reports.

Mrs. Pearl Strauss, the secretary of appellant company, at its general office in Kansas City, who as such had charge of the accounts of appellant, together with that of respondent, including the ledger sheets, showing the results of the business of the plant at Lamar, during the years of 1927 and 1928, identified the profit and loss ledger statements for the two years mentioned, which statements contained no reference to any charge against the Lamar plant for the Kansas City office overhead, such as salaries and sales expense, but on the contrary, showed only the expense allocated to the Lamar office, from the business properly belonging to it, as a separate branch office of appellant, which disclosed for the year 1927 net profits in the total sum of $10,276.54, ten per cent of which amounted to $1,027.65, and for the year 1928, a total net profit of the business of $2905.51, ten per cent of which was $290.55, or a total net profit due respondent, in the sum of $1,318.20, which with credits on the earnings of respondent for $300 paid on January 28, 1928, and $200 paid on June 29, 1928, with interest on the respective sums from the proper dates at six per cent per annum, amounted in all to the sum of $1072.75, due respondent on the date of the judgment in the trial court.

It was contended by appellant that the contract between respondent and appellant was intended to include the proportionate share of

the Lamar plant, in the expense of appellant's general office, at Kansas City, and that if that expense were included in the consideration of this case, appellant would not be indebted to respondent in any sum. This conclusion would be true if it were so intended by the parties, but in our opinion it was not so intended by either of the parties, when the contract was made and certainly was not so understood, when appellant offered its profit and loss account in evidence at the trial in the circuit court, omitting therefrom the expenses of appellant's general office at Kansas City. Upon this matter, Mrs. Strauss, the bookkeeper and accountant for appellant said she had charge of the books and records and accounting of the appellant, and was familiar with the accounting during the period of time including the years 1927 and 1928. She identified the profit and loss ledger sheets of appellant, kept by her, which were offered in evidence, showing the results of the operations at Lamar, for the two years mentioned, showing the profits to have been the amounts hereinbefore mentioned, but did not include therein the so-called proportion of the Lamar office, in the Kansas City general office expense. It is evident that the jury did not find that item to have been included in the contract of respondent with appellant, and if that was the conclusion of the jury, and that so appears to us, then we are in accord with the view of the jury in very apparently excluding the Kansas City office expense from its consideration.

The jury did find that appellant agreed to pay to respondent for his services at Lamar, ten per cent of the profits at Lamar. It is evidence that the remaining ninety per cent retained by appellant was at least partially for the purpose of providing for the payment by the Lamar office of its share of the expenses of the Kansas City office. The finding of the jury reflected the same opinion as to the facts upon that question.

It is urged by appellant that the issues between the parties involved an examination of long accounts of the operations of the Lamar branch of the defendant, together with the ascertainment of charges made against that branch, by reason of the allocation of certain items at the principal office in Kansas City, to-wit: Depreciation and office sales expense; and that as he insists these issues were directly involved in the case and the court should have ordered the matter referred to a referee, instead of attempting to try the case before a jury, citing: Sec. 976, R. S. Mo. 1929; Williams v. Santa Fe Ry. Co., 153 Mo. 487, l. c. 495, 54 S. W. 689; Collins Bros. Drug Co. v. McGraddy, 57 Mo. App. 45.

We are of the opinion from the evidence offered on that subject and the jury was of the same opinion, that the contract between respondent and appellant, upon that subject did not and was not intended to include the expenses of the Kansas City office, except in

so far as they referred to specific matters directly relating to the business of the Lamar office.

In addition, appellant urged that "according to plaintiff's own testimony the amount of the earnings of the Lamar branch were to be determined after the deduction of depreciation and the proportionate part of the overhead and sales expense in the Kansas City office," to which contention we cannot agree.

Appellant's counsel on cross-examination, sought strenuously to show that respondent and his wife so testified, but upon a fair consideration of the testimony of both respondent and his wife, we cannot escape the conclusion that they did not so state, and in their answer to the questions bearing upon that feature of their testimony, it is clear to us that their understanding was to the contrary and that the jury by its verdict, expressed the same opinion.

However, it is our opinion that the records before us do not support the amount of the verdict of the jury, and that the undisputed documentary evidence in the case is so manifestly and conclusively against the verdict as to amount, that in justice this court ought to interfere. [Yarber v. Conn. Fire Ins. Co., 10 S. W. (2d) 957; Jeans v. Morrison, 99 Mo. App. 208; Kazee v. Kansas City Life Ins. Co., 217 S. W. 340; Pietzuk v. Kansas City Railways, 289 Mo. 135, 232 S. W. 987; Halstead v. Mustion, 66 S. W. 258, 166 Mo. 488; Ray County Savings Bank v. Hutton, 123 S. W. 47, 224 Mo. 42; Neil v. Cunningham Store Co., 130 S. W. 503, 149 Mo. App. 53.]

It is our opinion, from the evidence and from our own computation, as hereinbefore stated, and we find the record to show conclusively, that excluding the Kansas City general expense, such as office labor and officers' salaries for the years 1927 and 1928, the total amount due respondent in this case, was on March 31, 1933, including principal and interest to said date, the sum of $1072.75, with interest thereon, at the rate of six per cent per annum, until paid, instead of the sum of $2,000 as found by the verdict of the jury.

Therefore, it is the judgment of this court that if respondent within ten days from the date hereof, fail and refuse to remit from said judgment of the circuit court, all in excess of $1072.75, then and in that event, the said judgment of the circuit court shall be reversed and remanded; but if respondent shall, within such ten days from the date hereof, consent to and accept such order of *remittitur*, then and in that event, the judgment of the circuit court shall, in the sum of $1072.75, with interest at six per cent, from March 31, 1933, be and is hereby affirmed. *Bailey* and *Smith, JJ.*, concur.