———o———

SAMUEL SPITLER, Respondent, *vs.* RANSOM V. YOUNG, Appellant.

1. *Municipalities—Restraint of animals—Ordinances touching—Penalties against owners, intended for what cases.*—The town of Trenton passed an ordinance authorizing the seizure of hogs found running at large within the corporate limits, and requiring the owners, in order to redeem, to pay certain penalties and costs. *Held*, 1st, that the penalty could be enforced although the owner resided without the corporate boundaries ; 2d, that the legislature, as a sanitary or police regulation, could pass an act authorizing such a measure ; 3rd, that the penalties of the ordinance were not intended to apply to cases where the escape of the stock was unavoidable, and the owner used requisite diligence in attempting to reclaim them.

*Appeal from Grundy Circuit Court.*

*Collier & Peery*, for Appellant.

*Daniel Metcalf*, for Respondent, cited : Dil. Corp., §§ 279, 283, 285, and cas. cited, §§ 308-2 ; Rosebaugh vs. Saffin, 10 Ohio, 32-37, and authorities cited ; Darst vs. The People, 51 Ill., 286.

WAGNER, Judge, delivered the opinion of the court.

This was an action under the statute to recover the possession of hogs claimed to be the property of the plaintiff. The defendant justified the seizure and detention of the hogs, as marshal of the town of Trenton, under an ordinance of that town. It appears that the plaintiff was a non-resident of the town, and that his hogs escaped into the town where they were taken up.

By the 4th subdivision of the first section of the act to amend the charter of the town of Trenton ( Sess. Acts 1874, p. 408), power is given to the incorporation " to prevent or abate all nuisances on public or private property."

Under this authority the town council passed an ordinance which the defendant pleads in justification. The first section declares all hogs running at large within the corporate limits to be nuisances, and the owner of each and every such animal is made liable to pay to the town the sum of one dollar for every twenty-four hours the same shall run at large, and also a fee to the marshal for taking them up. By the second section the marshal is required to take up and confine in a secure pen or place provided for that purpose, every such animal found running at large, and retain the same until redeemed or sold. Section three provides that if the owner of any such animal shall before the same is sold, pay the marshal the penalty provided for taking it up, then it shall be restored to him ; and if he does not redeem before sale by payment to the marshal of the penalty, then the officer shall proceed to expose and sell the same at public auction to the highest bidder. Section four authorizes the marshal to pay the money arising from the sale to the owner on his demand, after deducting penalty and costs. And section five requires that before a sale is made, an advertisement giving a description of the property to be sold, and the place where sold, shall be posted up for forty-eight hours.

The case was tried by the court, sitting as a jury, and the plaintiff gave evidence showing that he resided out of town and kept his hogs up in a pen ; the water washed his fence away and they

escaped, without any negligence on his part; and that he after-wards used due diligence to reclaim them, and that they were taken up by the defendant on the same day they made their es-cape. These facts were all embodied in a declaration which told the court if they were found to exist the verdict should be for the plaintiff.

Defendant offered two instructions; 1st: That if the court should find from the evidence that defendant at the time of taking up plaintiff's hogs, was marshal of the town, and that he took up the hogs while running at large in any street, lane, avenue or alley, or in any uninclosed place within the corporate limits of the town, then the verdict should be for the defendants; 2nd, that the charter of the town and the ordinances autho-rized the marshal to seize and restrain any hogs found running at large in the town limits, and the owner could not reclaim them without first tendering the marshal his fees for taking them up. Both of these instructions were refused, and there was a verdict and judgment for the plaintiff.

That the plaintiff was a non-resident cannot have material affect or alter the case. It is true that the ordinance of a muni-cipal corporation can have no extra-territorial force; but persons or property coming within the territorial limits of the corpora-tion, come under its authority.

The rights of all persons must be used in harmony and exer-cised in such a manner as not to injure each other. No doubt is entertained but that the legislature, as a sanitary or police regu-lation, may confer upon towns the power to adopt such measures as the one here resorted to.

As abstract propositions of law defendant's instructions were correct, but the question is, whether the facts would warrant the application of such a rule to this case, Statutes must be con-strued in reference to the subject matter, the objects which promp-ted and induced their enactment, and the mischief they were in-tended to remedy. The evidence shows, and the court found, that plaintiff resided outside of the town limits, and kept his hogs up in a pen, but by the floods a part of the fencing was swept

away and the hogs escaped ; that as soon as plaintiff heard of the escape of the hogs, and on the evening of the same day, he made pursuit of them, and on the next morning found them in possession of the defendant. Whilst physically they were found in the streets, or within the corporate limits, yet they were not there within the meaning and spirit as contemplated by the ordinance. The ordinance was designed to prohibit hogs from running at large, or within the town limits, in the ordinary sense. It was intended to compel people to restrain their animals, but it was not designed to punish them for an unavoidable escape, where the owner used the requisite diligence to reclaim them and regain their possession. The hogs were turned out by a power over which plaintiff had no control ; he made every necessary effort to re-take them, and I do not believe that under such circumstances the law ever intended to mulct him in costs.

The judgment was right and should be affirmed. All the judges concur, except Judge Vories, who is absent.