## EVANS v. HOLMAN et al., Appellants.

### Division Two, March 19, 1907.

1. **IMPOUNDING ANIMALS: Redemption: Paying Impounding Fees.** Under the ordinances of the city, in this case, the owner of a cow, which had escaped from his pasture without any negligence on his part and without his knowledge or consent, and had been taken up by the city marshal and kept for three days, was not entitled to recover possession of the cow until he paid the reasonable expense for keeping her.

2. ——: ——: ——: **Ordinance.** One section of the ordinance provided that "whoever shall permit his domestic animals to run at large within the city limits, shall, upon conviction thereof, be deemed guilty of a misdemeanor and fined in a sum not exceeding one hundred dollars." The next section made it the duty of the marshal to take up all domestic animals found running at large within the city limits and impound them and keep them in said pound until sold or redeemed, and another section provided that when any animal was taken up and impounded for running at large within the city limits the owner might redeem the same at any time before sale by paying the officer all costs accrued at the time of redemption. *Held*, first, that the first section is quasi-criminal, and for a violation thereof the owner may be convicted and fined, but to sustain a conviction it must be shown that the animal was permitted to run at large within the city with his knowledge and consent; *second*, the other sections are independent of that, and under them the marshal who had impounded a cow running at large on the street, although she may have escaped from the owner's pasture without his knowledge or consent and without any negligence on his part, may retain her until the owner pays the reasonable costs of impounding and keeping her. It is of no consequence, in such case, that the animal escaped and ran at large without the owner's knowledge or permission. [Distinguishing Spitler v. Young, 63 Mo. 42, and McVey v. Barker, 92 Mo. App. 498.]

3. ——: ——: ——: **Power of Cities.** Cities of the fourth class have the undoubted right and authority, under the pro-

visions of law applicable to them, to remove domestic animals running at large upon the streets, to care for them for their owner, and to make a reasonable charge against him for so doing.

Transferred from Kansas City Court of Appeals.

REVERSED (*with directions*).

*J. H. La Motte* for appellants.

(1)  Plaintiff's theory of this case and the theory adopted by the court is that unless plaintiff permitted and consented for his cow to run at large, defendants could not impound her.   This is error, for this is not a criminal proceeding.   McVey v. Barker, 92 Mo. App. 498; Schell v. Murray, 49 Mo. App. 233; Sloan v. Hubbard, 34 Ohio St. 583; Paris v. Hale, 13 Tex. Civ. App. 386.   (2)  The ordinance in evidence provides under section one for the punishing by fine of one who permits his animal to run at large in the city, and under section two the marshal is directed to impound said animals, under pain of being fined and put out of office for a  failure to do so, and charge for same as directed by the subsequent sections.   Now, to subject one to fine under section one the proof must be that he permitted the animal to run at large, but to justify the marshal in taking the cow up and disposing of her under the ordinance, the proof need be only that she was running at large upon the streets or alleys, etc.   McVey v. Barker, 92 Mo. App. 498.   This case is strictly on all fours with the McVey v. Barker case.  (3)  The court erred in giving declaration 1 on the part of plaintiff, as it is not warranted by the evidence.   Messrs. Hammett and Evans both say that they had no talk with defendants until the 31st, two days after the cow was taken up— that was not "immediate explanation the next morning"—and an instruction or declaration where there is no evidence to support it is error.   McAtee v. Van-

landingham, 75 Mo. App. 45. (4) The cow was in possession of Holman, the marshal, when suit was brought, and judgment should not have been against Burge. Possession at time of bringing suit is essential before judgment can be rendered against a defendant. Myers v. Lingenfelter, 81 Mo. App. 251; Feder v. Abrahams, 28 Mo. App. 454; Donis v. Randolph, 3 Mo. App. 454.

*Martin & Terrill* and *Aubrey R. Hammett* for respondent.

(1) Appellant filed an answer to respondent's petition by which he is bound, and in which he fails to state facts sufficient to constitute a defense, in this, that he fails to state that the cow was running at large on the streets, which is the language of the statute and ordinance under which he justifies the taking up of the cow. The allegation of the answer should at least be as broad as the ordinance and statute he relied upon. (2) Appellants having asked the court in their declaration 3, which was given by the court, to declare the law as announced in Spitler v. Young, 63 Mo. 42, to be the law of this case, and having tried the case upon that theory throughout, cannot now be heard to complain of said declaration of law. (3) The court properly declared the law of this case to be that if the cow escaped from the pasture without any fault of respondent and by means of some power over which he had no control, etc., they should find for respondent. Spitler v. Young, 63 Mo. 42. (4) Under proper declarations of law, the finding of facts by a jury upon conflicting testimony will not be disturbed by the appellate court. Much more deference is due to the finding of facts by the court sitting as a jury, at the request of both parties, and especially so when the court has twice heard the entire case.

*J. H. LaMotte* for appellants in reply.

(1) Appellants do not concede that the Spitler case, 63 Mo. 42, is the law of this case, as respondent says. The Spitler case is good law for cases that fit it. (2) The bane is that respondent's declarations 1 and 2 do not come within the scope of the Spitler case or any other case yet decided. They are in substance the same, and it will suffice to look at No. 2; it says the city marshal of the city of Huntsville has no right, under the law, to take up and hold stock found in the city limits and collect fees and expenses of the owner for such taking up and holding of the same, unless the owner of such stock permitted them to run at large in the city; and if plaintiff's cow was by him placed in a pasture to graze and keep her enclosed, and without his knowledge or consent she escaped therefrom by reason of someone leaving gates leading to the said pasture open, unbeknowing to plaintiff; and as soon as plaintiff learned of her escape he went in search of her and found her in the city pound; then plaintiff was not guilty of permitting his said cow to run at large, and defendant had no right to hold her, etc. This declaration goes by leaps and bounds beyond the Spitler case, and all others, and is error. McVey Case, 92 Mo. App. 498; Jeans v. Morrison, 99 Mo. App. 208; Dorton v. Burks, 99 Mo. App. 165.

FOX, P. J.—This cause was certified to this court by the Kansas City Court of Appeals for the reason, in the opinion of the court, the conclusions reached were in conflict with the rules announced by the St. Louis Court of Appeals in McVey v. Barker, 92 Mo. App. 498.

This appeal is from a judgment of the circuit court of Randolph county, Missouri. It is a suit for the claim and delivery of personal property, commonly called an action of replevin. The property involved

was a cow belonging to the plaintiff. This cow was in the possession of J. R. Holman, marshal of the city of Huntsville, Missouri, and he justifies such possession under the provisions of ordinances of such city. Plaintiff's cow had escaped from a pasture and went upon the streets of the city where she was found and taken charge of and put in the city pound by city officers. The officer refused to surrender the cow to the plaintiff unless he would pay the costs incident to impounding her. Plaintiff refused to pay such costs and brought the present action of replevin for the recovery of his property.

We deem it unnecessary to undertake to detail all of the testimony introduced upon the trial of this cause. It is sufficient to say that there was evidence tending to show that the escape of plaintiff's cow from the pasture was by reason of some of the gates being left open and not with his knowledge and consent, nor was such escape by reason of any negligence on his part. The cow was taken up by the city officials on the streets on the evening of May 28, 1900, and it was not until May 31st that the plaintiff, through his counsel, demanded the possession of her. There was some evidence tending to show that this cow had been found upon the streets and taken up on previous occasions.

It was agreed between the parties to this action that the city of Huntsville is a city of the fourth class, duly incorporated under the general statutes of the State of Missouri relative to the incorporation of cities, towns and villages.

The first section of an ordinance of the city provides that whoever shall permit his domestic animals to run at large within the city limits shall be deemed guilty of a misdemeanor.

The second section provides that the city marshal shall take up and impound any animal found running at large within the city limits and section three provides that he may sell it on proper notice.

Section four provides that whenever any animal is taken up and impounded, the owner at any time before sale may redeem it by paying the proper costs of impounding, but that such redemption would not prevent his being prosecuted for permitting it to be at large.

At the close of the evidence the court declared the law as in its opinion was applicable to the facts, and under the declarations of law and the evidence introduced, the court sitting as a jury, found for the plaintiff, and entered judgment against the defendants in the sum of one cent damages and for the possession of the cow.

Timely motions for new trial and in arrest of judgment were filed, and by the court overruled, and from the judgment in this cause the defendants in due time and proper form prosecuted their appeal, and the record is now before us for review.

. OPINION.

The respective contentions of respondent and appellants upon this cause as disclosed by the record, may thus be briefly stated: Upon the part of the respondent it is earnestly insisted that the facts developed at the trial of this cause bring it directly within the rules of law announced by this court in Spitler v. Young, 63 Mo. 42. On the other hand, appellants contend that the law as announced in McVey v. Barker, 92 Mo. App. 498, is decisive of the propositions disclosed by the record before us.

The case at bar is identical in principle with the case of McVey v. Barker, supra. It follows, therefore, if the rules of law as applied in that case are sound, they should be followed and should control the conclusions in the case before us. It is insisted, however, by respondent that the case of McVey v. Barker, supra, is in conflict with Spitler v. Young, heretofore cited. We have carefully considered the opinion of Judge

WAGNER in Spitler v. Young, and in our opinion it is readily to be distinguished from the McVey case and the case at bar. There is a marked distinction in these cases and this distinction is clearly pointed out by Judge BARCLAY in the McVey case. He said, respecting the action of the lower court, that:

"The trial court was obviously endeavoring to follow the doctrine of Spitler v. Young, 63 Mo. 42. The circumstances of that case were peculiar and they differ essentially from those presented in the case at bar. Spitler, the plaintiff, who claimed the hogs which wandered into the town of Trenton, was declared not guilty of any fault because the pen in which he had kept his hogs was washed away by a flood, 'a power over which plaintiff had no control,' in other words, by the act of God. It further appeared that the plaintiff made every requisite effort to recapture the animals; and, though they were 'physically found' in the streets of Trenton, it was held that the spirit of the ordinance of that town did not reach them or their owner for the purpose of punishment. Therefore, a recovery of the hogs by plaintiff was sustained. The escape of the hogs in the first place from the owner's premises was viewed as unavoidable, and his attempt to reclaim them exhibited 'requisite diligence.' So the court held that plaintiff was not subject to the penalties imposed by the local ordinance under the charter of Trenton. [Laws 1874, p. 409.]"

Further marking the distinction, Laddonia being the town involved in that case, it was said by the court speaking through BARCLAY, J., that:

"Laddonia is governed, however, by the general charter for cities of the fourth class which confers on the board of aldermen certain broad powers in relation to this subject, viz.: They may 'regulate or prohibit the running at large of cattle, hogs, horses, sheep, goats and other animals and domestic geese, and cause such as may be running at large to be impounded and

sold in such manner and time as may be provided by ordinance; they may also provide penalties for the owners who shall permit such animals or geese to run at large. The board of aldermen may also provide for the erection of all needful pounds, pens and buildings for the use of the city within or without the city limits, and appoint and compensate keepers thereof and establish and enforce rules governing the same.' [R. S. 1899, sec. 5959.] There is a distinction to be noted between a statute which attaches a penalty to the act of '*permitting* animals to run at large,' and one which makes it the duty of some official of a municipality to take up an animal found running at large in the public streets. Where the gist of the offense defined by the law is permitting an animal to run at large, it is obviously necessary to show some negligence, at least, on the part of the owner to bring the latter within the reach of the penalty denounced. But, where there is due sanction for such local regulations, it is competent for a municipality to ordain that animals found running at large may be taken up, irrespective of the question whether the owner is at fault or not in permitting them to be at large on the public street. The right by ordinance to exercise the police power of a municipality in taking up stray animals is beneficial, not merely for the preservation of good civic order, but also for the benefit of the owner of such animals which would be exposed to greater risk of destruction by being left to wander than by being impounded at a small expense. The above-quoted provision of the charter of cities of the fourth class clearly defines the distinction referred to. It authorizes the impounding of animals running at large and charges upon them the expense thereof, which the owner may pay at any time before the sale authorized in event the costs be not promptly forthcoming. But no penalty is to be imposed upon the owner except when he 'shall permit'

such animals to run at large. The language of the law governing Laddonia shows an obvious purpose to establish a different rule from that declared in Spitler v. Young, 63 Mo. 42, so far as concerns cities of the fourth class. The right to impound horses found at large in the public streets is distinctly given to the city. The right to exert that power is severed with equal distinctness from the right to impose a penalty on the owner for permitting the animal to run at large. The Legislature evidently intended to invest these municipalities with adequate authority to keep stray animals out of the public thoroughfares, irrespective of any inquiry why they got there. So far as concerns the safety, good order, cleanliness and appearance of the street, it is of no consequence how the animals came to be at large. The city has authority to remove them, to take care of them for whom it may concern, and to make a reasonable charge for so doing, in the exercise of its police power. That animals running at large in city streets may be impounded and reasonable charges for their restraint may be enforced, under the sanction of proper charter authority, was expressly held by this court in Sherrell v. Murray, 49 Mo. App. 233. The same doctrine has been lucidly expounded elsewhere. [Sloan v. Hubbard, 34 Ohio St. 583; Paris v. Hale, 13 Tex. Civ. App. 386, 35 S. W. 333.]''

It will be observed in Spitler v. Young the town authorities were undertaking to exercise their powers under the provisions of law to prevent or abate nuisances on public or private property, and the ordinances under which the city authorities in that case undertook to justify their possession of the hogs taken by the city marshal running at large in the street, declared all hogs running at large within the corporate limits to be nuisances, and the owner of such animals were made liable to pay to the town a penalty for every twenty-four hours such animals were permitted to run at large, in addition to the fee of the marshal

for taking them up. It is clear in that proceeding that the marshal was holding the possession of the hogs in controversy by reason of the provisions of the ordinance which imposed a penalty upon the owner of such hogs. In other words, the owner of the animals was found to be guilty of permitting his hogs to run at large within the corporate limits, which was declared by the ordinance to be a nuisance. In the case at bar it will be observed that the first section of the ordinance of the city of Huntsville provides that "whoever shall permit his domestic animals to run at large within the city limits, shall, upon conviction thereof, be deemed guilty of a misdemeanor and fined in any sum not exceeding one hundred dollars." The second section of the ordinance provides that it shall be the duty of the city marshal to take up any and all horses, mules, asses, cattle, swine, sheep or goats or other domestic animals found running at large within the said city limits and securely impound the same in some suitable pound to be provided by the city for that purpose, and keep said animals in said pound until sold or redeemed, during which time the person in charge of said pound shall feed and water all such animals so impounded." Then follows in said section a penalty upon the officer of ten dollars for a failure to perform his duty.

It is manifest that the marshal in the case at bar is not holding the possession of the cow of plaintiff in this case under the provisions of the first section, for failure to pay any fine imposed by that section, for there is an entire absence from this record of any reference to any proceeding to convict the plaintiff and impose the fine provided by that section. It is equally manifest that the officials of the city of Huntsville were simply holding possession of this cow under the provisions of section two, which makes it the duty of the city marshal to take up all domestic animals found running at large within the said city limits and se-

curely impound the same in some suitable pound to be provided by the city for that purpose. Then follows section four, which provides that when any animal is taken up and impounded for running at large in the city limits, the owner or person in control of such animal may redeem the same at any time before the sale thereof by satisfying the officer in charge of such animal that he is the owner thereof and is entitled to the possession thereof and by paying to said officer all costs accrued at the time of redeeming said animal. And to emphasize the fact that this provision is independent and has nothing to do with the imposition of any penalty, it is expressly provided that nothing in this section shall be construed as exempting such owner or person in charge of any animal so taken up and impounded from being prosecuted for a misdemeanor as provided in section one of the ordinance.

It is apparent, under the ordinance as introduced in evidence in this case, that there are two separate and distinct methods of procedure. You may proceed against the owner of the animal under section one, which provides for the imposition of a fine for permitting the animal to run at large. That is a quasi-criminal proceeding, and under that proceeding the contention of respondent can very well be maintained, for in order to authorize the imposition of a penalty for permitting the animal to run at large within the limits of the incorporated city, it must appear that such running at large by the animal in the streets of the town was with the knowledge or consent of the owner. In other words, that he in fact permitted such animal or animals to run at large upon the streets. The other method is under the provisions of section two, which makes it the duty of the city marshal to take up any and all domestic animals found running at large within the city limits and securely impound the same in some suitable pound to be provided by the city for that purpose. This is simply the exercise of a police power by

a municipality in taking up animals running at large upon the streets. In our opinion it has clearly the right to exercise such power, and as was said in the McVey case, "not merely for the preservation of good civic order, but also for the benefit of the owner of such animals which would be exposed to greater risk of destruction by being left to wander than by being impounded at a small expense."

Under this section of the ordinance no penalty is imposed, but merely the nominal expense which attends the taking up of the animal and securely impounding it, and no penalty can be imposed, except where it is made to appear that the owner permitted the animals to run at large. The distinguishing features as applicable to this case are plainly and correctly pointed out in the McVey case, and the rules of law announced in that case are clearly applicable to the case at bar and must be held decisive of it.

That the cow of plaintiff involved in this controversy was running at large within the limits of the city of Huntsville, and that she was taken up and impounded for that reason, there is no dispute, and the only demand made upon the plaintiff, in order to secure the possession of his cow, was to pay to the officer the sum of $2.50 as costs attending the taking up and impounding of the animal. This was reasonable and the plaintiff is not entitled to recover the possession of that animal until he complies with that demand. We are unwilling to interpret the law as applicable to cities of the fourth class that they are powerless to take up horses, cattle or hogs running at large in the public streets of the city and are powerless to tax reasonable costs for the taking up and impounding of such animals, except in cases where the owner permits them to run at large. It is the plain duty of the municipalities to provide for the safety, good order and cleanliness of their streets and they have the undoubted right and authority under the provisions of law applicable

to such cities to remove animals running at large upon the streets, to care for them for whom it may concern, to make a reasonable charge for so doing, in the exercise of their police power. In the exercise of such power, where no penalty is imposed upon the owner, it is of no consequence how the animal came to be at large, whether with the knowledge, consent or permission of the owner of such animal.

The judgment in this cause should have been for the defendants, and it is therefore ordered that the judgment of the trial court in favor of plaintiff be reversed, with directions that judgment be entered for the defendants.

All concur.