[Civ. No. 2417. Third Appellate District.—June 2, 1922.]

## DAVID POOLE, Appellant, v. ISAAC CLOVER, Respondent.

[1] ESTRAYS—IMPOUNDING UNDER COUNTY ORDINANCE—LIABILITY OF OWNER WITHOUT FAULT.—Under Ordinance No. 94 of the county of Yolo, an owner without fault, whose domestic animals have been driven off his premises against his will and without his knowledge or consent and left to run at large upon a highway, is not required to pay the fees and charges specified in that ordinance in order to recover such animals from an officer who has impounded them.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge. Reversed.

The facts are stated in the opinion of the court.

Grant & Bailey for Appellant.

C. C. McDonald for Respondent.

FINCH, P. J.—Plaintiff brought this action to recover possession of six head of horses. The answer alleges that at all times mentioned in the complaint the defendant was the constable of Woodland Township; that the horses were by the owner "permitted to run and be at large and to go unrestrained and to pasture and graze upon the public highways within the boundaries of the said Woodland Township . . . contrary to the provisions of section one of . . . Ordinance No. 63 of Yolo County; that . . . the defendant, acting in his official capacity as constable of said Woodland Township, took up and impounded the said domestic animals . . . under and by virtue of the provisions of said Ordinances No. 63 and No. 94 of Yolo County"; and that plaintiff refused to pay the "fees, expenses and costs due the defendant by reason of the impounding of the said animals under the provisions of said Ordinance No. 94."

Section 1 of Ordinance No. 63 provides: "No person or persons owning or having the care, custody, possession or control of any domestic animal of the species of horse, mule, donkey, cattle, sheep, goat, or swine, shall hereafter permit the same to run or be at large, or to go unrestrained elsewhere than upon his own premises, or to permit the same to pasture or graze upon the public highways, within the corporate limits of the County of Yolo."

Section 2 provides: "Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and be punished by fine not exceeding one hundred and fifty dollars, and not less than fifteen dollars, or imprisonment in the county jail not exceeding ninety days, or by both such fine or imprisonment."

Ordinance No. 94 provides: "It shall be lawful for, and the duty of, the constables of the various townships of Yolo County to take up and impound in a secure place any and all domestic animals running or being at large, or permitted to go unrestrained, or pasturing, or grazing upon the public highways of Yolo County in their respective townships, contrary to the provisions of Ordinance No. 63

of Yolo County; . . . and it shall be lawful for the constable of each of the aforesaid townships to collect from the owner or owners of each of the aforesaid animals so taken up or impounded the sum of $2.00 per head for each animal so taken up and impounded for his services in taking up and impounding the same, and in addition to the aforesaid sum each of the constables shall also be entitled to collect from the aforesaid owner or owners of each of the aforesaid animals so taken up and impounded the sum of 50c per head per day for his services in feeding and caring for the said domestic animals while in his keeping while impounded.''

[1] The ordinance further provides that the constable shall give notice of the taking up of such animals in the manner usually required in cases of estrays and sell them, if not claimed by the owner and the fees and charges paid within a prescribed time, and gives the constable a lien on the animals impounded for the amount of his fees and charges. The owner is permitted, at any time prior to the sale of the animals, to retake possession thereof upon payment of the accrued fees and charges.

At the trial the court sustained the defendant's objection to the plaintiff's attempt and offer to prove ''that the six head of horses in question were driven off the premises by servants of Mr. Conway, over whom the plaintiff in this action had no control; that they were driven off against the will and without the consent and without the knowledge of the plaintiff in the action; . . . that the plaintiff immediately tried to locate the horses for the purpose of recovery, and that he had absolutely no opportunity either at that time or any time subsequent to claim the horses before they got into the hands of the constable.'' The question is thus presented whether under the terms of Ordinance No. 94 an owner without fault, whose domestic animals have been driven off his premises against his will and without his knowledge or consent and left to run at large upon a highway, is required to pay the fees and charges specified in the ordinance in order to recover such animals from an officer who has impounded them.

Ordinances Nos. 94 and 63 must be construed together. The latter is made a part of the former as fully as if it were set forth at length therein. The latter, only, makes

it unlawful for the animals named to run at large or graze upon the highways. Ordinance No. 94 authorizes the constable to impound animals only when they are at large or upon the highway "contrary to the provisions of Ordinance No. 63." The constable must look to the latter ordinance to ascertain whether the animals are upon the highway under such circumstances as to justify him in impounding them under the authority of the former.

The provisions of Ordinances Nos. 63 and 94 are similar to those of the statute of 1874, which provided that no stock of any kind shall be "allowed to pasture upon any public highway, and it shall be the duty of all roadmasters and deputy roadmasters, within their respective districts, to take up all animals found pasturing upon the public highways." In *Thompson* v. *Corpstein*, 52 Cal. 653, in reversing the judgment of the trial court, it is said: "The court below found that the plaintiff's cattle had been driven from the plaintiff's land to Wolf Creek upon the Stephen's Creek road for the purpose of being watered, and while there in charge of a herder, who seems to have fallen asleep for a moment, were found pasturing upon both sides of the road. There is no pretense that the plaintiff or the herder intended that the cattle should pasture upon the road. That they were found eating the grass there was owing solely to the accident of the herder falling asleep for the moment, while in charge of the cattle. Had he fallen down in a fit, or been disabled by a sudden attack of disease, the same consequences might and probably would have ensued, but we do not think that in the one case, more than in the other, the cattle would be subject to proceedings under the act."

There is no difference in principle between that case and this, except that it may be said that the herder there was negligent in falling asleep, while here the plaintiff offered to prove that he was wholly without fault. *Thompson* v. *Corpstein* seems to be the only case in this state directly in point on the question under consideration and must be held to be controlling. In other jurisdictions the decisions are conflicting. The terms "at large" and "permitting animals to run at large" have often been defined in cases arising under penal statutes and those involving questions of negligence or contributory negligence. In such cases it

has generally been held sufficient for the party charged to show that he was without fault. (*Gentry* v. *Little,* 16 Ky. Law Rep. 26; *Evans* v. *Holman,* 202 Mo. 284 [100 S. W. 624]; *Ball Ranch Co.* v. *Hendrickson,* 50 Mont. 220 [146 Pac. 278]; *Marietta & C. Ry.* v. *Stephenson,* 24 Ohio St. 48; *Howrigan* v. *Bakersfield,* 79 Vt. 249 [9 Ann. Cas. 282, 64 Atl. 1130]; *International & G. N. R. Co.* v. *Seiders,* 50 Tex. Civ. App. 568 [110 S. W. 997]; *Willis* v. *Gerking,* 109 Wash. 382 [186 Pac. 1064].) In a number of states, where statutes or ordinances made it the duty of officers to impound cattle found running at large, it has been held to be no defense, as against fees and charges for impounding such animals, to show that the owner was without fault. (*Swander* v. *Wakefield,* 84 Ill. App. 426; *Gentry* v. *Little, supra; Bruce* v. *White,* 4 Gray (Mass.), 345; *McVey* v. *Barker,* 92 Mo. App. 498; *Peck* v. *Liesmann,* 142 Mo. App. 476 [127 S. W. 107]; *City of Paris* v. *Hale,* 13 Tex. Civ. App. 386 [35 S. W. 333].) In *Evans* v. *Holman, supra,* the first section of the ordinance provided that "whoever shall permit his domestic animals to run at large within the city limits, shall, upon conviction thereof, be deemed guilty of a misdemeanor and fined in any sum not exceeding $100." The second section provided that "it shall be the duty of the city marshal to take up any and all . . . domestic animals found running at large within the city limits and securely impound the same . . . and keep said animals in said pound until sold or redeemed" in accordance with the terms of the ordinance. The court said: "In order to authorize the imposition of a penalty for permitting the animals to run at large . . . it must appear that such running at large . . . was with the knowledge or consent of the owner. In other words, that he in fact permitted such animal or animals to run at large." It was held, however, that where animals were impounded under authority of the second section of the ordinance, "where no penalty is imposed upon the owner, it is of no consequence how the animals came to be at large, whether with the knowledge, consent or permission of the owner." In *Sloan* v. *Hubbard,* 34 Ohio St. 583, the first section of the act made it unlawful for owners of animals "to suffer the same to run at large in any public road or highway." Section 4 provided that in a prosecution for the penalty

prescribed by the first section it should be a defense to show that the "animal was at large without the knowledge of the owner or keeper and without his fault." Section 6 made it the duty of the officers therein named "to take up and confine any animals mentioned in the act, found at large contrary to its provisions." Since ignorance of the fact that the animals were at large was expressly made a defense under the fourth section and not under the sixth, it was held that it was not the intent to make want of knowledge a defense in a case arising under the sixth section. (See, also, *Burdett* v. *Allen,* 35 W. Va. 347 [14 L. R. A. 337, 13 S. E. 1012].)

In *Beeson* v. *Tice,* 17 Ind. App. 83 [45 N. E. 614, 46 N. E. 154], the case of *Thompson* v. *Corpstein, supra,* is cited and followed. In *Wolf* v. *Nicholson,* 1 Ind. App. 222 [27 N. E. 505], where animals were impounded under a statute authorizing them to be taken up when "found running at large upon the roads," it is held that "animals which escape from an inclosure . . . cannot be regarded as animals running at large where owner endeavors to recover them when he learns of their escape." In *Stephenson* v. *Ferguson,* 4 Ind. App. 230 [30 N. E. 714], under a statute requiring "road supervisors to cause animals running at large . . . to be impounded," the supervisor impounded certain animals. "Some unknown person or persons, without the knowledge or consent of the appellant, . . . threw down a portion of the fence by which the pasture was inclosed, and thereby released the cattle." The owner immediately went in search of them and found them the next morning in the supervisor's possession. The supervisor refused to give them up except on payment of twelve dollars as his charges. The court held that the supervisor could not so hold the cattle where the owner was not at fault. In *Carolina-Florida Planting Co.* v. *Maige,* 64 Fla 234 [60 South. 346], animals were taken up under a statute making it "unlawful for any livestock to run at large" and providing that "any person may take up and impound any livestock running at large" and collect from the owner certain charges and sell the livestock taken up where the owner fails to pay such charges. It was held that "a mere accidental or unknown escape of cattle does not make them 'running at large' within the statute."

58 Cal. App.—6

Respondent correctly states that the ordinance should be construed with reference to the object intended to be accomplished. It is also true, as said in *Dorris* v. *McKamy,* 40 Cal. App. 267 [180 Pac. 645], that ''the word 'permit' is a word of considerable elasticity.'' But, construing the two ordinances together, nothing contained in Ordinance No. 94 indicates an intent to authorize the constable to impound any animals except such as are at large or upon the highways in violation of penal Ordinance No. 63. If the constable has authority to hold plaintiff's animals, under the circumstances which plaintiff offered to prove in this case, then he may so hold animals under similar circumstances in all cases. It is not unusual for owners to confine several thousand sheep in a single field, securely fenced. If, under such circumstances, some miscreant at night, and without the knowledge of the owner, should tear down the fence and drive the sheep upon the highway and leave them there, would the constable have authority to impound them under the provisions of the ordinance and hold them until the owner paid two dollars a head and other charges for the constable's services in taking them up and caring for them? If so, then the provisions of the ordinance authorizing the impounding of animals would, in many cases, be more penal that the penal section. It cannot be presumed that the supervisors intended any such consequences.

It is not necessary to decide whether an ordinance would be valid which required animals running at large or grazing upon the highways, irrespective of the owner's fault, to be impounded and held until payment of reasonable charges therefor. It is sufficient to say that such does not appear to have been the intent in the passage of the ordinances in question here.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.