DAN MOSS, RESPONDENT, v. BONNE TERRE FARMING & CATTLE COMPANY, A CORPORATION, APPELLANT.*—10 S. W. (2d) 338.

St. Louis Court of Appeals. Opinion filed November 6, 1928.

*Corpus Juris-Cyc. References: Animals, 3CJ, section 611, p. 181, n. 88; Damages, 17 CJ, section 375, p. 1070, n. 64; Motor Vehicles, 42CJ, section 468, p. 828, n. 61; p. 830, n. 88.

*P. S. Terry* for appellant.

810

*Frank Dietrich* and *R. E. Kleinschmidt* for respondent.

DAUES, P. J.—This is an action for damages growing out of the alleged injury caused to the automobile of plaintiff, the respondent here, by certain mules belonging to defendant. It is alleged that the animals were running at large in Jefferson county on September 29, 1926, in violation of the "Stock Law;" that plaintiff, by agent, was operating the automobile on a public highway in Joachim township in that county in a prudent manner and at a slow rate of speed, and that his machine was damaged by the mules of defendant, "which defendant negligently, carelessly and unlawfully permitted to run at large outside of its enclosure and upon said highway." It is alleged that the mules were on the left side of the highway and ran directly in front of the automobile of plaintiff, causing a collision in which the automobile was damaged to the extent of $542.45.

The answer charged contributory negligence, with a counterclaim for $400 for the negligent killing of the mules. The answer did not put the enactment of the Stock Law in issue.

The reply was a general denial.

There was a verdict and judgment in favor of plaintiff for $275, and against defendant on its counterclaim, from which defendant has duly appealed.

Plaintiff's evidence tended to prove that a young man in the employment of plaintiff on the day mentioned drove plaintiff's automobile northwardly, or on the right side of the highway, at the rate of about twenty miles an hour. He encountered a Ford truck running southwardly along the west side of the highway. Immediately in front of the truck were defendant's unattended mules, one of which ran southwardly on the left or east side of the highway, directly into plaintiff's automobile. It was nighttime and dark and foggy. Both plaintiff's automobile and the truck were lighted, and it was hardly necessary to show, though there is proof, that the mules were without artificial lights. The evidence is that they were on the wrong side of

the highway. The proof is to the effect that the reasonable value of the repairs on the automobile as a result of this collision was about $350, and that the depreciation of the car fell $100, and that the difference in the value of the car before and after the accident was more than the verdict. There was no attempt made by plaintiff to prove the Stock Law was in force at that time and place and upon the theory that since it was not specifically denied that then it was not necessary for plaintiff to prove it.

Plaintiff introduced a young man named La Porte, who drove the car, and he testified as to the facts as set out in our statement. This witness was corroborated by another lad named Coleman, who was in the car with him at the time. La Porte was nineteen years of age and Coleman eighteen years at the time.

Witness Dugan, who was in the automobile business and who was an automobile mechanic, testified as to the extent of the damages, he having repaired plaintiff's car, and he said that the reasonable value of the services performed in repairing the car was $349; that the depreciation was $100, and that the automobile was worth $650 before the injury and $250 after the injury.

For the defendant, witness Eckhoff testified that he saw the mules that were not killed or crippled running upon the highway. (It seems that about three or four of them were unharmed.) This witness said that while he did not see the collision, he saw plaintiff's car immediately before that, and that the car was then going at a speed of about thirty-five to forty miles an hour.

Witness Byington, testifying for defendant, said that he lived on the property of defendant company; that he knew about the collision; that he had put the mules up; that they had never been permitted to run outside to his knowledge; that on the night in question he had placed the animals in the enclosure about dark and had fastened the gates leading to the barn lot on that evening, and that in so far as he knew no one had turned the animals out through the gates. On redirect examination, he said that after the mules had gotten out he discovered that the gate was open; in fact, that both gates were open, and that he brought the mules back that night. His son, Archie, testified to practically the same state of facts. Witness Short likewise corroborated this statement.

There was then testimony on the part of defendant as to the value of the mules. One was killed outright and the other died of injuries. It was shown that the mules were all good-sighted. On that evidence the case went to the jury on instructions by both plaintiff and defendant, eventuating in the verdict set forth.

Counsel for appellant in the briefed assignments of error takes the position that the running at large of animals within the meaning of the Stock Law does not reach the running at large of an animal unless there is knowledge, consent or willingness on the part of the

owner, or such negligent conduct as is equivalent thereto of the animal being at large, and that under the facts of this case the circumstances are such that we should rule as a matter of law that there is no proof of a violation of the Stock Law statute. In other words, it is insisted that under the circumstances here, defendant cannot be held liable because there is no fault of the owner shown. A decision of this question is the fulcrum of the case.

Both sides cite and rely on the comments in 3 Corpus Juris, page 180, section 611, wherein the general rule is announced that where an animal in a Stock Law community is found running at large, or where ordinance authorizes the taking up of animals running at large, it is prima-facie evidence that such animal is at large contrary to such law. It is true, the rule is also there stated that there is a wide difference between cases involving a fine or penalty and those which provide for impounding and damages. In the first case, wilfulness or equivalent negligence is an element; in the latter, it seems not to be an element. At least, that is our best understanding of it. That the mules were running at large on the wrong side of the road, and that the injury to plaintiff's automobile resulted from the collision and the claimed extent of the damage, cannot be questioned.

While reference is made in the petition and in the instructions to negligence, yet the case is bottomed upon section 4275, Revised Statutes Missouri, 1919, which provides that animals (mules) should be securely kept enclosed, and if "found running at large outside the enclosure of the owner," it shall be lawful for any person to take them up, and it is the duty of the constable of the township to do so, and thereupon the owner shall be liable for the cost of impounding such animal. And it is then provided that the owner shall be liable to pay all expenses and "to pay all persons damaged by such animals running at large." He shall pay the actual damages sustained by anyone growing out of the animals being at large, and if the owner shall refuse to pay such damages, same may be recovered in court.

Now, observably, this statute does not expressly declare a defense that the animals broke out through no fault of the owner. We think it may safely be ruled that the mere finding of the stock at large is prima-facie evidence of a violation of the Stock Law. If it be correct that in this case the question of negligence was in issue—and we can say that certainly this case was not brought on the ·theory of common-law negligence—then we agree with the reasoning in Baldwin v. Ensign, 49 Conn. 113, where it is held in a case where an injury occurred to one by stock running at large, and the plaintiff had a lawful right to be where he was, and the animal was unlawfully on the highway, then if the animal being there, worked a hurt and damage to plaintiff, recovery could be had under the statute or under

the common law. And, as said in Hill v. Scott, 38 Mo. App. 370, where it is shown that the animal is under the management of the defendant, and the action grows out of a condition such as would not transpire if those who have the management had restrained the animal as the law contemplates, then in the ordinary course of things it affords reasonable evidence, in the absence of explanation by the defendant, that the action arose for want of care and, as there said, a horse does not ordinarily get loose if carefully hitched, or, as here, a mule would not ordinarily be on the highway unattended if requisite care were exercised to impound the animal. And if the animal is found at large that is enough to make a prima-facie case in either event.

Throughout the reasoning of the cases from other jurisdictions the thought runs that in a case of this kind the mere finding of the animals outside of the enclosure is somewhat akin to the doctrine of *res ipso loquitur*, because the physical facts furnish evidence of the noncompliance on the part of the owner with the law. And the reference to negligence in the petition may be said to refer to and be considered an allegation that the law was disobeyed in that the animals were not kept safely enclosed. So we think there was a case made for the jury and it was not destroyed by defendant's evidence under the line of cases, such as Cannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.

Appellant relies upon Evans v. Holman, 202 Mo. 284, 100 S. W. 624, expostulating the proposition that where the gist of the offense defined by law is permitting animals to run at large, it is obviously necessary to show some negligence on the part of the owner to bring him within the reach of the penalty. In that case there was an ordinance in the village prohibiting the running at large of animals. It gave the marshal the right to take up such animals. The ordinance provided a penalty, a misdemeanor, on the part of the owner to allow the animal to be at large, and it was held that before there could be a *conviction* under the ordinance, knowledge of the owner or negligence be shown. But under our statute, the owner is absolutely liable for all damage caused by animals being at large. But, as has already been pointed out, the jury were required to find the fact to be that the owner was at fault in permitting these mules to be out.

The case of Spitler v. Young, 63 Mo. 42, and which case does not seem to be followed by the later cases, is distinguished in Evans v. Holman, supra, and McVey v. Barker, 92 Mo. App. 498.

In City of Union v. Lindemann, 242 S. W. 416, there was a city ordinance making it unlawful to wilfully permit chickens to be at large, and the court there said that since the ordinance contained the word "wilfully" that it was a defense to show that the fowl had been kept in a suitably constructed fence. Under the statutes here involved, no reference is made to "wilfulness."

In the case of Putermann v. Simon, 127 Mo. App. 511, 105 S. W. 1098, relied upon by appellant, there was an ordinance making it a misdemeanor to leave a horse standing in a public place without being fastened so as to keep it from running away. The horse in that case bit a person. Action for damages was brought under the ordinance, and the court held that the ordinance was not designed to prevent such a damage as this, but was designed to prevent damage done by runaway horses, which of course is a different proposition than we are confronted with. The Stock Law statute does not attempt to limit the kind of damage done by reason of animals running at large. It is not a criminal statute providing a penalty but is civil in its nature.

The case of Head v. Powell, 212 Mo. App. 310, 245 S. W. 618, is clearly distinguishable. Nor are the cases involving the biting of a person by a vicious dog in point. The instant case is brought specifically under a statute which authorizes recovery for damages done by animals at large in violation of the Stock Law statute.

But appellant also insists that the court erred in not sustaining the demurrer to the petition, in that same fails to allege that defendant knew the mules in question were outside of defendant's enclosure, or that defendant had reasonable cause to believe such fact, and also that the petition fails to allege that by the exercise of ordinary care the defendant could have known that the mules in question were likely to go upon the highway. What we have said before answers that question.

We have examined appellant's complaint about the instruction on the measure of damages. This instruction is as follows:

"The court further instructs the jury that if you find the issues for the plaintiff, then in estimating his damages, if any, you will take into consideration the fair and reasonable cost of repairing said automobile, if you find it needed repairing by reason of said injury; and you will also allow him compensation on account of any depreciation in said car by reason of said injury, and in assessing compensation by reason of such depreciation, if any, you will find the actual cash value of said car, if any, before the injury and the actual cash value of said car, if any, after the injury and after said car was repaired, if you find it was repaired after the injury, and your verdict for such depreciation, if any, will be the difference between the value of said car, if any, before the injury, and its value, if any, after the injury and after said repairs were made, if you find said repairs were made, and if you find there was a difference in said value, the total damages, however, not to exceed the sum of $542.45."

Appellant says this instruction fails to meet the requirements set forth in Stanley v. Weber Implement Co., 190 S. W. 372; Gilwee v. Pabst Brewing Co., 195 S. W. 487, and Morrow et al. v. Wabash R. Co., 219 Mo. App. 62, 265 S. W. 851.

While the instruction could be more clearly drawn, it does fairly advise the jury, we think, that plaintiff's damages are to be measured by the standards set out in the authorities above. These authorities hold, of course, that you cannot recover for the difference between the value immediately after the injury and then also collect for the cost that will be required to repair the property. By allowing such standard, one would collect double damages. The instant instruction allows for the reasonable expense in repairing the car, if any, such as already has been expended. Then the instruction allows in addition thereto the yet remaining damage to the car. That is to say, the loss in value by depreciation because of the injury, with the repairs made, to be measured, however, within the original boundary of the value immediately before and after the accident. In this manner plaintiff could recover the actual damages and no more. He could recover the difference in the value of the car before and after the injury, with the expended repairs, if any, in effect to be deducted. We see no duplication of damages authorized in this instruction. The verdict is well within the evidence.

Other complaints have been examined, and we rule they present no reversible error. Judgment affirmed. *Becker* and *Nipper, JJ.,* concur.